# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                              Case No. 1:24-cr-01819 KWR

MARIO GONSALEZ JR.,
GUILLERMO GARCIA JR., and
CRUZ ZERMENO

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Garcia's Motion to Suppress Evidence 2: Evidence From Defendant Garcia's Cell Phones **(Doc. 74)**. Having reviewed the parties' briefs and the applicable law, the Court finds Defendant Garcia's motion is not well-taken and, therefore, is **DENIED.**

## BACKGROUND

Defendants were charged with conspiracy to distribute a controlled substance (21 U.S.C. § 846) and possession with an intent to distribute a controlled substance (21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2). Defendant Garcia moves to suppress evidence recovered from his cell phones, and alternatively, he seeks a *Franks* hearing alleging the Government recklessly omitted exculpatory facts from affidavits supporting the search warrants.

On November 20, 2024, Homeland Security Investigations Task Force Officer Juan Rodriguez ("TFO Rodriguez") stopped a black Acura for following too closely. **Doc. 74-1, at 6.** Defendant Gonsalez drove the car, and Defendant Garcia sat in the passenger seat. *Id.* **at 6–7.** TFO Rodriguez approached and smelled marijuana emanating from the car. *Id.* **at 6.** Another Task Force

Officer observed a jar of marijuana in plain view on the rear floorboard of the car. *Id.* at 7. Defendant Gonsalez said they were traveling to Mission, Texas, but Defendants Garcia and Zermeno said they were traveling to Mission, New Mexico. *Id.* Further, Defendants Garcia and Zermeno said they were going to see Gonsalez's ill father, but Gonsalez told TFO Rodriguez his father was not sick. *Id.* at 6. Shortly after, TFO Rodriguez searched the car and found a black plastic garbage back containing over twenty-five pounds of methamphetamine in the trunk. *Id.* at 7. None of the Defendants claimed ownership of the methamphetamine, but Defendant Gonsalez claimed ownership of separate luggage in the trunk. **Doc. 74, at 5.**

Law enforcement seized Defendant Garcia's black Apple iPhone and black Vortex cell phone which were found on the front passenger seat and front passenger floorboard respectively. **Doc. 74-1, at 8; Doc. 74-3, at 8.** On November 27, 2024, Judge Rozzoni issued warrants authorizing searches of Defendant Garcia's phones. **Doc. 74-1; Doc. 74-3.**

Agent Gavin Hayes drafted the affidavits in support of the issued warrants. The affidavits included photographs of the phones and sought a search of a "black-color Apple iPhone currently in the custody of HSI in evidence bag A744566," **Doc. 74-1, Attach. A, at 16**, and a "black-color Vortex phone currently in the custody of HSI in evidence bag A7445760," **Doc. 74-3, Attach. A, at 15.** The searches of each phone were limited to records and information relating to violations of 21 U.S.C. §§ 841 and 846. **Doc. 74-1, Attach. B, at 17; Doc. 74-3, Attach. B, at 16.**

In the affidavits, Agent Hayes swore the following:

TFO Rodriguez observed a black Acura TLX displaying a California license plate of 9MWY466 traveling eastbound on I-40 while following another vehicle too closely. TFO Rodriguez initiated a traffic stop on the Acura.

Upon approaching the vehicle, TFO Rodriguez noticed a strong odor of raw marijuana emanating from the Acura. TFO Rodriguez interviewed the driver and identified him by driver's license as Mario GONSALEZ, Jr., of Bakersfield, California. GONSALEZ stated they were headed to Mission, Texas to visit his father. TFO Rodriguez interviewed the

passengers of the vehicle, including Guillermo GARCIA, who stated they believed they were going to Mission, New Mexico to visit GONSALEZ's sick father. GONSALEZ informed TFO Rodriguez that his father was not sick.

TFO Rodriguez informed GONSALEZ that he intended to search the Acura based on the probable cause of the odor of marijuana emanating from it. While assisting with removing the two passengers from the vehicle, Bureau of Indian Affairs (BIA) Officer N. Jackson, who is also an HSI TFO, observed a jar containing a green leafy substance he immediately recognized as marijuana. TFO Jackson observed the jar of marijuana on the back left floorboard of the vehicle.

While conducting the search of the Acura, TFO Rodriguez located a black plastic bag in the trunk of the vehicle. TFO Rodriguez opened the bag and observed a crystalline substance . . . . The substance presumptively tested positive for methamphetamine.

[The phones were] found on the front passenger seat . . . . [and] front passenger floorboard, where GARCIA had been sitting.

**Doc. 74-1, at 6–7; Doc. 74-3, at 6–7.**

Agent Hayes also swore to the following based on his training and experience and consultation with other law enforcement officers: (1) those in possession of illegal drugs for distribution often use electronic devices to communicate with co-conspirators and customers; (2) records, documents, and transactions may be stored on electronic devices; (3) drug trafficking necessarily involves two people and communication is needed; and (4) photos or videos of associates, drugs, and firearms can be stored on cell phones. *See* **Doc. 74-1, at 3–6; Doc. 74-3, at 3–6.**

## DISCUSSION

Defendant Garcia seeks suppression of all evidence recovered from his phones. First, Defendant Garcia argues the supporting affidavits lack sufficient probable cause to issue the warrants. **Doc. 74, at 7; Doc. 92, at 7.** Second, Defendant Garcia contends the probable cause is not sufficiently particularized as to his phones. **Doc. 92, at 3–4.** The government contends the affidavits contain sufficient probable cause. **Doc. 85, at 17.** Third, Defendant Garcia seeks a

3

*Franks* hearing and argues Agent Hayes omitted several facts from the affidavits that would have vitiated probable cause. **Doc. 76, at 9–11.** The government argues Defendant Garcia has not met the threshold showing for a *Franks* hearing. **Doc. 85, at 20.** Finally, in the event probable cause is not found, Defendant Garcia argues the good-faith exclusionary exception does not apply. **Doc. 92, at 10–12.** The government contends any deficiencies in the search warrants would not have been evident to a reasonably trained officer, and the good-faith exception would apply. **Doc. 85, at 20–23.**

The Court concludes the following: (1) the issuing judge had a substantial basis for finding probable cause; (2) the probable cause was sufficiently particular; (3) a *Franks* hearing is unnecessary; and (4) if probable cause is deemed insufficient, the good-faith exception would apply.

I.     <u>**Whether the Search Warrants of the Phones are Supported by Probable Cause.**</u>

Defendant Garcia challenges the search warrant, arguing that the supporting affidavits lack sufficient facts to support probable cause and, relatedly, that Agent Hayes's training and experience does not contribute to the probable cause finding as to Defendant Garcia. **Doc. 74, at 7; Doc. 92, at 3–4, 7.** The Court disagrees.

When reviewing the issuance of a search warrant, the reviewing court gives "great deference to the decision of the issuing . . . judge." *United States v. Sims*, 428 F.3d 945, 954 (10th Cir. 2005) (citation and internal quotations omitted). The reviewing court considers whether "under the totality of the circumstances presented in the affidavit, the . . . judge had a substantial basis for determining probable cause existed." *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) (citation and internal quotations omitted). For probable cause to support a search warrant, a supporting affidavit must contain facts that "would lead a prudent person to believe

there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001). The affiant must show a nexus between the place to be searched and the items to be seized. *See United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009) (citation omitted); *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999) (citation omitted). However, the supporting affidavit "need not contain direct evidence or personal knowledge that the items sought are located at the place to be searched." *Nolan*, 199 F.3d at 1183.

Courts often "rely on the opinion of police officers as to where contraband may be kept." *Poolaw v. Marcantel*, 565 F.3d 721, 735 (10th Cir. 2009) (citation omitted). For an officer's training and experience to support probable cause, the affidavit must set out facts showing why, based on their experience and training, "there was reason to believe [evidence of a crime] is more likely to be found at the particular location." *Id.* at 735 n.10 (citation omitted).

Here, the Court concludes that the issuing judge had a substantial basis for concluding that probable cause existed. The four corners of the affidavits support a conclusion that there was a fair probability that evidence of a crime would be found on Defendant Garcia's cell phones.

The affidavits provide that TFO Rodriguez stopped the car Defendant Garcia was a passenger in, and TFO Rodriguez noticed a strong odor of marijuana emanating from the car. **Doc. 74-1, at 6; Doc. 74-3, at 6.** While TFO Rodriguez interviewed Defendant Gonsalez, TFO Jackson observed a jar of marijuana in plain view on the floor behind the driver's seat. **Doc. 74-1, at 8; Doc. 74-3, at 8.** The affidavits also state TFO Rodriguez searched the trunk of the car and found a "black plastic bag" containing methamphetamine. **Doc. 74-1, at 8; Doc. 74-3, at 8.** The cell phones in question were found on the front passenger seat, **Doc. 74-1, at 8**, and the front passenger floorboard, **Doc. 74-3, at 8.** In light of these facts, the location of Defendant Garcia and his phones

create a sufficient showing of probable cause and a nexus between his phones and the criminal activity. *See United States v. Slater*, 971 F.2d 626, 637 (10th Cir. 1992) (determining cell phones to be "recognized tool[s] of the [drug] trade").

Relatedly, Defendant Garcia contends Agent Hayes's "boilerplate" statements about his experience and training do not contribute to probable cause. **Doc. 92, at 7.** The Court disagrees. Agent Hayes swore that, based on his training, experience, and consultation with informed officers, those in possession of illegal drugs for distribution often use electronic devices to communicate with co-conspirators and customers. Further, he swore that records, documents, and transactions can be kept on such devices. *See* **Doc. 74-1, at 3–6; Doc. 73-1, at 3–6.** Because these facts, in light of Agent Hayes's training and experience, explain why it is more likely that evidence of drug trafficking will be found on Defendant Garcia's phones, Agent Hayes's statements do contribute to a sufficient finding of probable cause and establish a nexus between the phones and criminal activity. *See United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 873–74 (10th Cir. 1992) (finding probable cause sufficient to authorize a search warrant in part based upon an officer's narcotics investigation experience).

Accordingly, the affidavits provide sufficient facts for the issuing judge to find a fair probability that evidence of a crime would be found on Defendant Garcia's phones.

II.   **Whether the Probable Cause was Sufficiently Particularized.**

Secondly, Defendant Garcia claims the probable cause is not sufficiently particularized to his phones. **Doc. 92, at 3–4.** The Court disagrees.

The probable cause belief must be "particularized with respect to the person to be searched," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). A person's "mere propinquity to others independently suspected of criminal activity

6

does not, without more, give rise to probable cause to search that person." *Ybarra*, 444 U.S. at 91 (citation omitted). When a guilty person is singled out, "any inference that everyone on the scene of a crime is a party to it must disappear." *Callahan v. Unified Government of Wyandotte County*, 806 F.3d 1022, 1029 (10th Cir. 2015) (quoting *Pringle*, 540 U.S. at 374). Without any singling out, it is reasonable to infer "that *any or all three of the occupants* had knowledge of, and exercised dominion and control over, the [methamphetamine]." *Id.* (citation omitted).

Defendant Garcia relies heavily on the fact that the affidavits omit Defendant Gonsalez stating "It's mine" when asked about luggage in the trunk. **Doc. 92, at 3, 9.** Defendant Garcia argues had Defendant Gonsalez's statement been included, the probable cause would not have been particularized as to him. *Id.* The omission is better addressed as a *Franks* motion; however, even if Defendant Gonsalez's claim to the luggage was included, the methamphetamine was not found in the luggage, it was in an unclaimed, "black plastic bag." **Doc. 74-1, at 8.** Defendant Gonsalez said "It's mine" concerning the luggage in the trunk. **Doc. 74, at 5.** Defendant Gonsalez never claimed ownership over the black plastic bag full of methamphetamine which was the primary basis for probable cause. *Id.* Because no singling out occurred, it is reasonable to infer that "*any or all three of the occupants* had knowledge of, and exercised dominion and control over, the [methamphetamine]." *Pringle*, 540 U.S. at 372 (finding probable cause to arrest suspect after all three men in car denied ownership of the cocaine and money in the vehicle) (emphasis added).

Accordingly, the probable cause is sufficiently particular to Defendant Garcia.

### III.    **Whether Certain Omissions Warrant a *Franks* Hearing.**

Defendant Garcia contends including several material omissions from the affidavits would have vitiated probable cause for the warrants. **Doc. 76, at 9–11.** The Court disagrees.

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a "Fourth Amendment violation occurs if (1) an officer's affidavit supporting a search warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued." *United States v. Herrera*, 782 F.3d 571, 573 (10th Cir. 2015) (citation omitted). Defendant's allegations "must be accompanied by an offer of proof . . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks*, 438 U.S. at 171. If an "affidavit contains intentional, knowing, or reckless omissions, a court must add in the omitted facts and assess the affidavit in that light." *Herrera*, 782 F.3d at 575 (citation omitted). A defendant must show, by a preponderance, that (1) the omitted information was "material" such that "its inclusion would have vitiated probable cause for issuing the warrant;" and (2) the affiant acted with the requisite mental state in omitting the information. *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (citations omitted); *see also United States v. Campbell*, 603 F.3d 1218, 1228 (10th Cir. 2010).

Before addressing the merits of Defendant Garcia's *Franks* motion, Defendant Garcia contends his "motion and memorandum and proffered record facts are 'a suitable preliminary proffer of material falsity.'" **Doc. 92, at 10.** However, *Franks* requires an "offer of proof" generally in the form of affidavits, sworn, or otherwise reliable witness statements should be produced or a showing as to why they are not produced. 438 U.S. at 171. Defendant Garcia has not produced any accompanying affidavits, witness statements, or satisfactorily explained their absence as is usually required for a *Franks* hearing. *See Artez*, 389 F.3d at 1116 ("Before the defendant will be entitled to such a hearing, however, the defendant['s] . . . allegations must be accompanied by an offer of proof.").

A. <u>Materiality</u>

In assessing materiality, courts consider "whether a warrant would have issued in a but-for world where the attesting officer faithfully represented the facts." *Herrera*, 782 F.3d at 575. In doing so, a court (1) removes falsities from the affidavit, (2) includes any material omissions, and (3) inquires whether the modified affidavit establishes probable cause for the warrant. *See Puller v. Baca*, 781 F.3d 1190, 1197–99 (10th Cir. 2015).

Defendant Garcia claims the following omitted statements would have vitiated probable cause: (1) Mr. Gonsalez's statements that the luggage was his; (2) the passengers had no luggage; (3) Agent Wilson's preliminary hearing testimony was that he was not aware of evidence that Mr. Garcia possessed the methamphetamine in the trunk; (4) Defendant Garcia was in the passenger seat, but the marijuana was on the rear floorboard; (5) Defendant Garcia spoke with agents post-arrest, denied involvement, and made no incriminating statements; and (6) Defendant Garcia stated he was traveling with Defendant Gonsalez to visit Gonsalez's father for Thanksgiving. **Doc. 76, at 9–11.** The Court finds that, even considering all these omitted facts together, these are not material omissions which vitiate probable cause for the warrant. Because Defendant Gonsalez claimed ownership of the "luggage" and not the "black plastic bag" containing methamphetamine, the omitted facts as to Defendant Gonsalez's luggage and the passengers' lack of luggage are immaterial. **Doc. 92, at 4.** Further, claiming ownership of the luggage does not exculpate the passengers from being in the same car as the unclaimed methamphetamine. Because no singling out occurred, under *Maryland v. Pringle*, it is proper to infer that each passenger exercised dominion and control over the methamphetamine in the trunk. *See* 540 U.S. at 372. This inference makes the remaining omissions immaterial. **Doc. 76, at 9–10.** Accordingly, none of the omitted facts, taken individually or cumulatively, amount to a material omission that vitiate the probable cause of the warrants.

### B. Recklessness

Recklessness requires "evidence that the officer in fact entertained serious doubts as to the truth of his allegations." *Kapinski*, 964 F.3d at 908 (citation and internal quotations omitted). Recklessness may be inferred from "circumstances evincing obvious reasons to doubt the veracity of the allegations." *Id.* (citation and internal quotations omitted).

While the Court may infer a reckless mental state from circumstances evincing obvious reasons to doubt the veracity of the allegations, there are no circumstances that reveal any obvious reasons to doubt the affidavit. *Id.* (citations omitted). Moreover, Defendant Garcia offers no evidence, beyond conclusory allegations, that Agent Hayes acted with a reckless mental state. **Doc. 92, at 9.** Accordingly, the Court finds that the second requirement for a *Franks* hearing is not met.

In sum, Defendant Garcia has not met his burden to have a *Franks* evidentiary hearing.

## IV. Alternatively, Whether the Good-Faith Exception Applies.

In the event probable cause is found insufficient, Defendant Garcia contends the good-faith exception does not apply because (1) the applications were so lacking in indicia of probable cause that any reliance was unreasonable, (2) that the issuing judge was misled by the affiant's reckless omissions, and (3) the warrant was so facially deficient that the executing officer was unreasonable in assuming its validity. **Doc. 92, at 11–12.** The Government argues any deficiencies in the warrants would not have been evident to a reasonably trained officer, and the good-faith exception would apply. **Doc. 85, at 23.**

The exclusion of evidenced attained in violation of the Fourth Amendment is a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect," and wrongfully obtained evidence may still be admitted under an exclusionary exception.

*United States v. Calandra*, 414 U.S. 338, 348 (1974). The good-faith exception applies when "an officer acting with objective good faith has obtained a search warrant . . . and acted within its scope," but the warrant is later deemed invalid. *United States v. Leon*, 468 U.S. 897, 920 (1984). The good-faith exception does not apply in the following four situations: (1) the issuing judge is misled by false information the affiant would have known was false but for his reckless disregard for the truth; (2) the issuing judge wholly abandons her judicial role; (3) the affidavit is so lacking "in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) the warrant is so facially deficient that the officer could not reasonably believe it was valid. *Id.* at 922–23.

To apply the good-faith exception, a court reviews the text of the warrant and affidavit and asks, "whether a reasonably well trained officer would have known that the search was illegal despite the [judge's] authorization." *Id.* at 922 n.23. The government "bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable." *United States v. Corral-Corral*, 899 F.2d 927, 932 (10th Cir. 1990) (citation omitted).

If probable cause is deemed insufficient, the good-faith exception applies. First, the supporting affidavits sufficiently established all three passengers failed to claim ownership over the methamphetamine in the car, and Agent Hayes established facts that make it more likely that evidence of drug trafficking would be found on Defendant Garcia's phones. **Doc. 74-1, at 6–7.** So, even if probable cause should fail, the applications themselves were not so lacking in indicia of probable cause to make the officer's reliance unreasonable. *See United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005) ("[G]ood faith may exist when a minimal nexus between the place to be searched and the suspected criminal activity is established."). Second, Defendant Garcia fails to show Agent Hayes's omissions were reckless, and he fails to show the omissions

11

misled the issuing judge because the omitted facts were not exculpatory, independently or taken together. **Doc. 74, at 7; Doc. 76, at 12; Doc. 92, at 9.** Third, the warrant was not so facially deficient that the officer was unreasonable in presuming its validity. The warrants are sufficiently particularized as to the phones searched, the scope of the search was sufficiently limited to electronically stored information relating to violations of 21 U.S.C. §§ 841 and 846, and the issuing judge signed the warrant applications and affidavits. **Doc. 74-1, at 15–18; Doc. 74-3, at 14–17.** *See United States v. Russian*, 848 F.3d 1239, 1247 (10th Cir. 2017) (finding further support for reasonable reliance on warrant when an issuing judge signs both the warrant application and affidavit). Because the supporting affidavits and warrants provide reasonable grounds for an officer to rely on in good faith and the affiant was not reckless in omitting information, the good-faith exception applies if probable cause is deemed insufficient.

## CONCLUSION

In sum, the Court finds the following: (1) the issuing judge had a substantial basis for concluding that probable cause existed to search Defendant Garcia's phones; (2) the probable cause was particularized to Defendant Garcia; (3) Defendant Garcia does not meet the burden for a *Franks* hearing; and (4) in the alternative, the good-faith exception applies if probable cause is deemed insufficient.

**IT IS THEREFORE ORDERED** that Defendant Garcia's Motion to Suppress Evidence 2: Evidence From Defendant Garcia's Cell Phones is **DENIED**.

\_\_\_\_/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE